Thank you. It's not going to affect council. I can ignore it. We'll at least wait until we take a regular recess. Good morning, Mr. Hirsch. Good morning. May I begin? If it pleases the court, David Hirsch, representing Mr. Baez-Martinez, I'd like to reserve two minutes. Yes. Thank you. The first issue is, I think we all agree, whether the jury would naturally and necessarily take the prosecutor's remarks in this case as comments on the defendant's silence. I think if we were just looking at the first of the two remarks, saying it's uncontested, uncontested, it would probably be acceptable under this court's jurisprudence. But here we have that telltale second remark, not only that it's uncontested, but that the only witnesses that have provided testimony that were actually there that night are only Agents Gonzalez and Serrano. Everyone else had no knowledge of what happened that night. Wasn't that factually – here's the problem I'm having with that. One side calls witnesses A, B, and C who were direct eyewitnesses. The other calls witnesses X, Y, Z who were not eyewitnesses to the scene but have information to offer that has circumstantial appropriate force to it. Why can't the other side stand up and say, hey, my witnesses were the only ones who were actually at the scene. None of the others can contest what they saw. In a civil case, there would be no problem with that. And in a criminal case, if there were other potential witnesses, there would be no problem with this. But there are other potential witnesses. There are 50-some-odd people, according to one witness, in that bar, and there's a bartender. Most of the people are inside the bar. We're left with – but that really isn't the issue. We're left with, say, six customers and the bartender. So what we're left with is the opportunity for the defense to send an investigator to ask, hey, is anybody here in this drug-ridden, high-crime incident bar willing to testify in front of a judge? But that's not what we're left with. You just said there were no other potential witnesses. The record belies that because in addition to the other patrons, let's leave them aside for a minute. There's a bartender there. Defense counsel says in his opening statement to the jury, we're going to call the bartender, and this is what the bartender is going to testify to. And then the bartender never appears. And that, I think, points out one of the real issues in interpreting Griffin. What is the response to? So I think if the prosecutor had done pretty much what Your Honor just suggested, if they said, well, where's the bartender, that would have been perfectly acceptable. But putting it more broadly as all of the witnesses who were there are for the defense, that leaves the only one left being, excuse me, Mr. Baez Martinez. The issue here is that there's no ‑‑ No, no, no, wait a minute. You said in the answer to Judge Kayott, all right, that there would have been nothing wrong with the prosecutor saying what he said in effect, my witnesses had direct recipient knowledge of the facts here. And the other witnesses who testified did not observe the accident, had no direct recipient knowledge. And Judge Kayott asked you why that isn't their argument. And your response was, it would be if there were other potential witnesses. And so I'm just pointing out to you that by the admission of your trial counsel, there were other recipient witnesses. I don't agree, Your Honor, because I think what we have here is just the possibility that one witness, kind of a hail Mary pass, one witness could perhaps have helped out the defense. But what we don't know here, what happened to that witness in the interim? Was this a hail Mary? There is such a possibility. Excuse me, in what interim are we talking about? The interim between the opening statements? Yes, Your Honor. And the closing statements? Yes, Your Honor. So that's two days. I'll take the court's, I don't recall. No, it's a two and a half day trial. Okay. All right? Your problem here is you've got a tough standard of review, right? Of course. And how these words, and you make a good argument that you could construe these words in the way you're arguing. But when you look at the transcript, nobody who's sitting in the room in context with tone of voice, intonation, body language, no one said, ouch. And so it leaves us with a very tough. And that makes it obviously much tougher for me and Mr. Baez Martinez. But I think even when there's no objection, case law is clear that when there can only be one construction on the matter, what can only be looked upon as a comment on the defendant's silence, then the court must decide for the defendant, must reverse, assuming there's sufficient prejudice, that is. And here the prejudice is enormous because unlike cases such as Sepulveda, where there was an overwhelming amount of evidence, here we have the situation where there's just the, I'm having a little trouble here, Your Honor. You've also appealed, and if you want to keep going on with this, do, but you've also appealed on the translation issue. Yes, Your Honor.  How do you suggest that the Jones Act be complied with and yet translation errors not be allowed to persist and trial? What mechanism would you suggest? The prosecutor can say, objection, Your Honor, may we approach the bench. That's the easiest way, and that would have been no problem at all in this case. Prosecutor can say that, but is there any case holding that he has to say that? I think that's kind of looking through the wrong end of the microscope, the telescope, Your Honor. I think what's going on here is not whether the prosecutor must take a particular action, it's what particular action the prosecutor must not take. And here the action they must not take is basically to testify, and that's what he did. Well, he certainly has a right to make an objection. Of course. And there's no requirement that all objections be made at sidebar, although some trial judges imposed that. This trial judge didn't. And defense counsel never asked for such an arrangement and never said here can we take this to sidebar or anything like that, was content to have the objection here. So, again, we've got plain error review. Exactly. But that doesn't change the fact that, first of all, it's not necessary. Judge Kayyad asked me how the prosecutor could have handled it. I gave one answer. There are other ways the prosecutor could have done this, say stated just an objection and then waited until a break in the court proceedings to flush it out, as is often done, say, in the Massachusetts courts. The fact that the prosecutor is not required to do it one way doesn't allow the prosecutor to do it the other way, and there is no way to construe what the prosecutor did here as anything other than testify. I agree. It may well be ineffective. It was at least bad practice for the defense lawyer not to object. But it's plain error. Thank you. Good morning. USA Max Perez-Bure. Mr. Perez-Bure, I just have really one question. Going forward, does your office agree with Mr. Hirsch that a good way to proceed in this translation situation is to approach the bench rather than the prosecutor interjecting what he thought someone said? Okay. I will address the translation issue first. In the District Court of Puerto Rico, obviously we have many objections to the translation because most of our witnesses are Spanish speakers. So I would say 75%, 80% of the time we have a translator in the court. And as such, all parties, the judges, the defense, and the government, do object to the translations. And this case was no exception. Not only did the government object twice to translation, so did the defense. No one is complaining about objecting. Obviously you have objected. The question is do you then stand there in front of the jury and blurt out your translation or do you go up and argue it to the judge? Well, basically it happens as it happened in this case. The defense blurted out in page 80 of the transcript, basically Johnny Plaza, an experienced attorney, basically said- Okay, so he hit you first and then you hit him. But I'm talking about what the general norm is. It's not about hitting first or second. It's about basically the norm in Puerto Rico. And the norm is what we see in this transcript? Exactly. Exactly. And going as to the more- You know that's not the norm in the other districts. Well, it also depends on the judge. It also depends on the judge. There's judges that have a tighter handling of their courtroom. There are others that are more lax. And if you read through the transcript- So in Puerto Rico it doesn't always happen this way? This is a typical matter. You can go across the board. Maybe in Judge Cerezo, who she's a tighter judge, she might ask you to approach more. But in the other courtrooms they're more lax. And basically you say objection to a translation. In this case, I said at one time the answer was where we would be. Thank you. No objection from the defense. In the case of the defense, they stood up and said, Your Honor, may we ask the translation to be corrected? And she stated the question was that the wall would have been between where the defendant was standing and where the officer found- Are you getting the warning that's coming from some of us on this side of the bench? Yes. Okay. Definitely I would- Is there anything else in your brief on the other issues that you feel needs to be emphasized? Or do you want to rest on your brief for the rest? I would like just to put into context, when this court needs to determine the context of my comment, it needs to do so in light of the context. And the defense counsel bases his argument in the Flannery case. And the Flannery case facts are definitely not related and has nothing to do with the facts in this case. In the Flannery, we had a cooperator that took a stand and testified about a private conversation between the cooperator and the defendant. You're talking about the uncontested issue? Yes. You get the burden. It's plain error, right? Yes. Okay. And the distinction between Flannery in this case is spelled out in your brief, so I don't know what you're adding at this point. Okay. Thank you very much. I will rest on the brief. Yes. I'll add only one thing, Your Honor. If this is the standard procedure in the District of Puerto Rico, it's about time that the standard procedure in that district change. The fact that something's done routinely in an inappropriate way does not in any way make it valid. Thank you. Thank you.